[No. 23585.   Department Two.   August 3, 1932.]

E. C. LLOYD *et al., Appellants,* v. THE FIDELITY NA-
TIONAL BANK OF SPOKANE *et al., Respondents.*[1]

[1]Reported in 13 P. (2d) 504.

*Lawrence H. Brown, E. L. Casey,* and *W. A. Toner,* for appellants.

*Hamblen & Gilbert* (*Philip S. Brooke,* of counsel), for respondents.

MILLARD, J.—National banks are prohibited from making usurious contracts. The pertinent statutes read as follows:

"Any association may take, receive, reserve, and charge on any loan or discount made, or upon any note, bill of exchange, or other evidences of debt, interest at the rate allowed by the laws of the State, Territory, or District where the bank is located, and no more, except that where by the laws of any State a different rate is limited for banks of issue organized under State laws, the rate so limited shall be allowed for associations organized or existing in any such State under this Title. U. S. Rev. Stat., § 5197; Title 12, U. S. C. A., § 85.

"The taking, receiving, reserving, or charging a rate of interest greater than is allowed by the preceding section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid from the association taking or receiving the same: Provided, That such action is commenced within two years from the time the usurious transaction occurred." U. S. Rev. Stat., § 5198; Title 12, U. S. C. A., § 86.

In this state interest in excess of twelve per centum per annum is usurious. Rem. Comp. Stat., § 7300.

Under the provisions of § 5197, *supra,* a national bank is prohibited from charging or receiving, on any loan made by it, interest in excess of the rate allowed by the laws of the state in which such bank is located.

If a greater than the lawful rate of interest is charged, § 5198, *supra,* furnishes a defense. The charging, knowingly, of usurious interest "shall be deemed a forfeiture of the entire interest." Section 5198, *supra,* also gives a right of action in the event the debtor has paid the usurious interest. There may be a recovery by the debtor or by his legal representatives of twice the amount of interest paid if he bring an action therefor within two years from the time the usurious transaction occurred.

"National banks are prohibited from making usurious contracts. If they disregard its provisions, the law not only furnishes a defense, but gives a right of action. As to the defense, there is no statute of limitations. Whenever sued the debtor may plead the usurious contract and be relieved from paying any interest whatever. But if he elects to avail himself of the cause of action, he must sue 'within two years from the time the usurious transaction occurred.' ". *McCarthy v. First National Bank,* 223 U. S. 493.

Plaintiffs, under the provisions of § 5198, *supra,* instituted this action to recover twice the amount of alleged usurious interest claimed to have been paid by them to the defendant bank within two years prior to October 7, 1930, the date of the commencement of this action.

Defendants interposed a motion for an order requiring the plaintiffs to make their complaint more definite and certain by separately stating the several causes of action stated therein, and also demurred upon the grounds that (1) several causes of action were improperly united; that (2) the complaint did not state facts sufficient to constitute a cause of action; and that (3) the action was not commenced within the time limited by law. Plaintiffs informed the court that it was impossible for them to separately state their causes of action and that they would refuse so to do.

Thereupon the court sustained the demurrer upon the three grounds recited above and denied defendants' motion to strike certain portions of the complaint. The appeal is from the judgment of dismissal, rendered upon the plaintiffs' refusal to plead further.

The complaint alleged that appellants, a marital community, were owners and holders of all of the capital stock of the Lloyd Land Company, a corporation; that E. C. Lloyd and Felix LeMarinel were co-partners operating under the names of Lloyd & Le-Marinel and LeMarinel and Lloyd; that, during the period of 1922 to 1924, E. C. Lloyd and O. W. Kerr were co-partners doing business under the names of Lloyd & Kerr and Kerr & Lloyd; that respondent bank is a national banking corporation with its principal place of business at Spokane; that, since June, 1929, the other respondents have been and now are trustees for the respondent bank for the collection and distribution among its creditors and stockholders of certain assets of the bank.

"VI. That on to-wit, August 11, 1917, said Lloyd and LeMarinel applied to said Fidelity National Bank for a loan of $31,000.00 which loan was granted by said bank on condition that said Lloyd, said LeMarinel and said Lloyd Land Company would each and all execute to said bank their promissory notes in the principal sum of $34,000.00 due in 90 days therefrom and drawing interest at 8 per cent per annum, which said condition was complied with, said notes for $34,-000.00 so executed and delivered and said loan of $31,-000.00 consummated. That in so doing said bank knowingly reserved and charged a usurious rate of interest, to-wit:—in excess of 12 per cent per annum.

"VII. That thereafter said promissory notes, together with accumulations of interest thereon, were by renewal notes from time to time renewed; certain additional and other loans were from time to time made by said bank to plaintiffs, Lloyd Land Company, Lloyd and LeMarinel and Lloyd and Kerr (notes for

which were at all times signed by E. C. Lloyd) and from time to time with accumulations of interest thereon renewed; various and sundry payments were from time to time made on said notes and a continuous transaction and relation of lender and borrower carried on between said bank and plaintiffs from month to month and year to year up to December 29th, 1928. That during all of said time the principal of such loans, the legal interest thereon, the usurious bonuses and charges, payments, refunds, discount and all dealings in connection with such transactions were by said bank commingled in its accounts so that the identity of the several transactions were and remains lost. That a detailed statement of usurious transactions, other than those hereinafter more fully set out, between August 11, 1917, and December 29, 1928, containing a list of notes with the dates and amounts thereof, the names of the makers and endorsers, the interest and discount taken or reserved thereon and the sundry payments, credits and renewals is attached to the original complaint herein, marked plaintiffs' 'Exhibit X' and made a part hereof.

"VIII. That during all of said period of to-wit, 11 years up to said December 29, 1928, said bank required and had and held in pledge all of the property of these plaintiffs, both real and personal, as security for the payment to said bank of all sums claimed by said bank to be due to it from plaintiffs, and by reason thereof plaintiffs were at all times in necessitous circumstances and obliged to comply with all the demands of said bank and did so comply.

"IX. That on December 29, 1928, said bank, claiming that plaintiffs were indebted to it in the sum of $28,700.00, demanded of plaintiffs payment thereof in the manner following:—

"That plaintiffs deed to said bank a certain farm in Whitman county, near Garfield, Washington, at the agreed and reasonable value (over and above a mortgage thereon) of $16,376.44, that plaintiffs transfer to said bank a certain mortgage for $9,000.00 on lands in Yamhill county, Oregon, which would be taken at its face value, and that plaintiffs give to said bank a promissory note for $2,700.00 and pay $635.56 in cash.

That plaintiffs in order to get their pledges released acceded to said demand and in settlement of all the demands of said bank paid the said sum of $28,700.00 by making and delivering to said bank $623.56 in cash, a deed to said Whitman county farm, and assignment of said Yamhill mortgage and a promissory note for $2,700.00. That said note for $2,700.00. wholly represented and represents usurious interest on plaintiffs' borrowings, wholly lacks consideration and is void and of no effect.

"X. That in addition to the items of interest reserved and charged on plaintiffs' borrowings from said bank, as set forth in plaintiffs' 'Exhibit X,' as aforesaid, said bank by the following tricks and devices, knowingly entered into for the purpose of concealing usury in its transactions with plaintiffs, obtained from plaintiffs the following monies and property in the following manner:—

"A. On or about the month of March, 1925, plaintiffs resided upon and were the owners of a large farm near Nampa, Idaho, known as the Wireless Ranch particularly adapted to sheep raising, of the reasonable value of, to-wit, $50,000.00, but encumbered by first mortgage of to-wit, $18,000.00. At said time plaintiffs were heavily indebted to said bank and had no other property than the equity in said farm (of the value of, to-wit, $32,000.00) and about, to-wit, $900.00 in cash; all of which was well known to said bank. These plaintiffs then and there desiring to stock said farm with sheep applied to said bank for a loan of $10,000.00 for that purpose and offered to pledge their equity in said Nampa farm and the said sheep to be purchased as security for such loan. Said bank through its officers orally agreed to make plaintiffs said loan of $10,000.00 subject only to the approval of the security, to-wit, the land and the sheep, by F. D. Garrett, one of the Trustees of said bank. That thereupon acting for said bank, said Garrett inspected said land and the sheep proposed to be purchased and then and there informed plaintiffs that said offered security was satisfactory, and acting for and on behalf of said bank, directed plaintiffs to purchase said band of sheep and to make a down payment thereon and that the balance of the

purchase price could be paid upon the completion of said loan, and that said bank would make said loan immediately upon completion of the necessary papers therefor. Relying thereon plaintiffs contracted for said sheep and with the knowledge of said Garrett paid on the purchase price the sum of $900.00, which plaintiffs then had on hand. That thereupon plaintiffs came to Spokane, went to said bank and offered to make, execute and deliver the necessary real estate second mortgage and chattel mortgage to secure the said loan of $10,000.00 in accordance with the terms thereto agreed; that said bank then and there and with full knowledge of the fact that plaintiffs had contracted to purchase said sheep, had paid $900.00 thereon, that plaintiffs would lose the said $900.00 if the purchase be not completed and that the plaintiffs had no additional funds with which to purchase other sheep or operate said farm and were in necessitous circumstances, refused to make plaintiffs a loan of $10,000 but offered to loan plaintiffs $15,000.00 on the same security as had been offered and agreed upon, to-wit:— the land and sheep, providing the plaintiffs would agree to purchase from the said bank for $32,000.00 a certain farm in Whitman county, Washington, known as the Hooper Ranch and owned by said bank, subject to a first mortgage of $16,000.00 thereon, on which purchase the plaintiffs were to pay to said bank the sum of $5,000.00 out of the proceeds of said loan as an initial payment, and provided further that the plaintiffs would also deed or cause to be deeded to said bank a certain farm near Pendleton, Oregon, of the agreed and reasonable value of $4,000.00. The plaintiffs, by reason of their necessitous circumstances and being at the mercy of said bank and knowing that unless they acceded to its demands they would be unable to operate said farm, would lose the down payment on the sheep and would in all probability lose all of their assets, did as directed by said bank, namely, borrowed from said bank $15,000.00 instead of $10,000.00 (which was all the financing they needed), contracted to purchase the said Whitman farm for $32,000.00, paid $5,000.00 out of the proceeds of the loan on the contract purchase price, deeded to the said bank the

Pendleton, Oregon, farm at the said valuation of $4,-000.00, and as security for said sum including the contract purchase price on the Whitman land gave to the said bank a mortgage on the Nampa Farm and a chattel mortgage on the said sheep for $32,895.13. That the said Whitman county farm was at said time of the market value very much less than $32,000.00, being of a reasonable value of not to exceed $20,000.00, which fact was well known to the said bank and to all of its officers. That at no time since contracting to purchase said Whitman county farm has the same been worth to exceed the amount of the first mortgage with accumulations thereon. That said mortgage thereon has been heretofore forclosed, was sold at sheriff's sale for about $17,000.00 and a deficiency judgment in the sum of $2,390.00 taken against plaintiffs in the superior court of Whitman county, Washington, which judgment remains wholly unsatisfied.

"B. That on or about March 3, 1926, the plaintiffs being in necessitous circumstances and being then and there largely indebted to the Fidelity National Bank and having no funds or property not already pledged to said bank applied to the bank for a further loan which was then and there refused: That thereupon the said bank proposed to these plaintiffs to sell to these plaintiffs for ten hundred and thirty-eight ($1038.00) Dollars a certain judgment that said bank had or was about to take against one Kerr; that said judgment and the note upon which it was founded was not any obligation of these plaintiffs. Nevertheless, the said bank procured from these plaintiffs their promissory note for Ten Hundred Thirty-Eight ($1038.00) Dollars and pretended to assign to these plaintiffs the said Kerr judgment: That said transaction was sham and was made for the sole and only purpose on the part of the bank to induce these plaintiffs to pay the said sum as additional interest on their borrowings from said bank; that said judgment was and at all times since has been wholly worthless and said judgment and note were known both by the bank and by this defendant to be wholly worthless, and said Kerr was insolvent at said time and has since so remained: That said note for Ten Hundred and Thirty-

Eight ($1038.00) Dollars dated about March 3, 1926, and signed by these plaintiffs was given to said bank, and said note was commingled with plaintiffs' other indebtedness as set forth in Exhibit 'X' and was paid on December 29, 1928, with interest at 7%; that a judgment was thereafter taken against Kerr by the Riverside Finance Company, a corporation, wholly owned and controlled by the bank and acting for the use and benefit thereof being cause number 75084, records of Spokane County Superior Court; that said judgment was never transferred or assigned to the plaintiffs and the said bank still holds the same and exercises ownership thereof.

"C. That thereafter and in the year 1926 plaintiffs having completed a certain real estate transaction near Pullman, Washington, and there being due plaintiffs therefrom the sum of $5,000.00 of all of which said bank had full knowledge, said bank demanded of plaintiffs that such sum when paid should be paid directly to said bank to be paid upon and applied to plaintiffs' indebtedness thereto. These plaintiffs complying with said demand instructed that such payments be so made to said bank and then and there instructed the said bank that when said $5,000.00 was received the same should be credited upon the note indebtedness of plaintiffs to said bank and specifically directed that no part of same should be applied on the said contract of purchase from said bank of said Whitman county farm. That thereafter and on—to-wit, June 4, 1927, said $5,000.00 was paid to said bank, which then and there violated the instructions of plaintiffs and for the purpose of concealing its usurious transactions applied $748.14 thereof on the unpaid principal of said Whitman county land contract and $141.04 on interest on such contract, and took and retained the same to its own benefit.

"D. That several weeks prior to the settlement of December 29, 1928, all as set forth in paragraph 9 hereof, plaintiffs and said bank through its officers had definitely agreed upon the terms of such settlement as the same was and is contained in said paragraph 9, but at that time the Yamhill county mortgage had not yet been made; plaintiffs being of the belief that the same

would be in the principal sum of $9,000.00; that thereafter plaintiffs having advanced $760.00 in connection with said Yamhill property and in order to protect themselves for such advance took said mortgage in the sum of $9,760.00 instead of $9,000.00 and on causing the said mortgage to be transferred to said bank and the settlement of December 29, 1928, demanded to said bank that their note for $2,700.00, be reduced in the sum of $760.00, but said bank then and there refused and knowingly took and appropriated the same to itself and has failed to account therefor or any part thereof. That plaintiffs were in such necessitous circumstances that they were required to and did submit.

"XI. That in taking, receiving, reserving and charging the sums for interest as set forth in plaintiffs' 'Exhibit X' and in the items contained in paragraph 10 hereof, said bank knowingly took, received, reserved and charged a rate of interest greater than 12 per cent per annum, in violation of the provisions of Sections 5197 and 5198 of the Revised Statutes of the United States.

"XII. That plaintiffs have paid to said bank for interest on the borrowings of plaintiffs as hereinbefore more specifically set forth the sum of $39,424.51. That interest on said borrowings at the rate of 12 per cent per annum, which is the highest rate of interest allowed in the State of Washington, for the sundry periods of such borrowings amounts to the sum of $32,909.73. That the difference between these two figures of $6,514.78 represents a usurious charge made by the said bank against plaintiffs for the loans aforesaid.

"XIII. That all of the payments of interest made on any and all of said borrowings were made by plaintiffs and that of interest so paid $26,000.00 thereof was paid on the 29th day of December, 1928, and plaintiffs are entitled to recover from the defendants twice the amount of the interest thus paid, to-wit, the sum of $52,000.00."

Appellants argue: This is not an action to recover twice the amount of usurious interest paid at different times and on different loans, hence they are

not required to separately state each payment of usurious interest as a separate transaction. It is admitted that as to any payments of usurious interest made prior to October 7, 1928, recovery would be barred by the two-year statute of limitations. The eleven-year history of the transaction was pleaded to show by way of inducement the eventual payment of unlawful interest, the transactions referred to in the complaint being stated as mere incidents to the one cause of action which was brought to recover twice the amount claimed to have been paid as usurious interest December 29, 1928. The two-year period of limitations begins to run from each actual payment of usurious interest. The complaint did not allege any payment of usurious interest was made as such, except the last payment of December 29, 1928, from which date the period of limitation would begin to run. Whether that payment consisted wholly of interest is a question of fact to be determined upon the trial of that issue.

There was not a misjoinder of causes of action; that is, a joinder in the complaint of plural causes of action which can not be joined. The complaint stated facts sufficient to constitute only one cause of action, which cause of action was not barred by the two-year statute of limitations.

If this were an action to recover twice the amount of usurious interest paid at different times and on different loans the appellants would be required to separately state their several causes of action. While there are several distinct loan accounts, appellant Lloyd was the maker of all of the paper referred to in the complaint. The bank statements (exhibit "X"), made a part of the complaint, do not contain—nor does the complaint allege that those statements list—all the items of usurious charges. The complaint specifically alleges that, in addition to the items of interest re-

served and charged on appellant's borrowings from the bank, as set forth in exhibit "X", the bank, by tricks and devices (as alleged in paragraph X of the complaint), concealed usury in its transactions. This action, it must be remembered, is not one brought by the bank and the defense interposed that the bank charged or reserved more than a lawful rate of interest.

The complaint alleged that, on August 11, 1917, the bank made the first loan which was in the amount of thirty-one thousand dollars; that for the loan the bank exacted of appellants promissory notes in the principal sum of thirty-four thousand dollars due in ninety days with interest at the rate of eight per centum per annum. These notes, together with accumulations of interest thereon, were by renewal notes from time to time renewed. Additional and other loans were from time to time made by the bank to appellants and from time to time with accumulations of interest thereon renewed; that there was a running account, in which the interest was charged, up to December 29, 1928. Exhibit "X" discloses that the transactions constituted a running account; that appellants borrowed from time to time; that the interest on such loans was charged against appellants and that the loans and the interest charged were paid by renewal notes. Our examination of the bank statements does not reveal that money or money's worth was ever given in satisfaction of any of the loans, other than the payment of December 29, 1928, closing the account.

██ ██ In the application of the congressional enactment relating to usurious contracts of national banks, we are bound to follow the adjudications of the United States supreme court. When the debtor actually makes, and the bank knowingly receives or appropriates, a payment of usurious interest, the cause of action arises and the statute begins to run. To sub-

ject a bank to the penalty of double the amount of usurious interest, usurious interest must actually have been paid either in money or its equivalent. The mere charging of such interest in a running account, or accepting renewal notes including the usurious interest, is not sufficient. *McCarthy v. First National Bank,* 223 U. S. 493.

Each actual payment of usurious interest is the "usurious transaction" referred to in that part of § 5198, *supra,* giving the right to recover "twice the amount of the interest thus paid." Where the payment made is at a rate greater than the rate allowed by the laws of the state in which such lending bank is located, twice the whole amount paid, legal as well as illegal interest, may be recovered. *Baker v. Lynchburg National Bank,* 120 Va. 208, 91 S. E. 157.

There is no allegation, nor do the bank statements show, that any payment of usurious interest was made as such except the last payment of December 29, 1928. Definitely, specifically, the appellants alleged that all of the payments of interest made on their borrowings were made by appellants and that of the total amount of interest paid twenty-six thousand dollars was paid December 29, 1928. Whether any portion of that interest was usurious was a question of fact.

The judgment is reversed, and the cause remanded with direction to the trial court to overrule the demurrer.

TOLMAN, C. J., MAIN, and BEALS, JJ., concur.